FAUSTO ORTIZ GINORIO ET AL., Plaintiffs and Appellants, *v.* McCORMICK STEAMSHIP COMPANY, Defendant and Appellee.

No. 8034. Argued May 9, 1940.—Decided October 28, 1940.

552

*Enrique Igaravídez* for appellants. *Brown, González & Newsom* for appellee.

Mr. Justice Hutchison delivered the opinion of the court.

Plaintiff, a partnership doing business under the name of Gillwood Cigar Co.—hereinafter referred to as Gillwood—as lessee of the ground floor of a building, sublet a part of that floor to the McCormick Steamship Co.—hereinafter referred to as McCormick—to be used as a warehouse for the storage of rice and other kinds of cargo. On the roof, over that part of the ground floor which remained in the possession of Gillwood, was a penthouse. In order to reach

the roof over that part of the ground floor occupied by McCormick, it was necessary to pass through this penthouse. During the nights of June 14 and 15, 1937, water from the roof penetrated that part of the building occupied by McCormick, and damaged a considerable quantity of rice.

McCormick's attorneys, in a letter dated June 22, referred to information said to have been previously furnished Gillwood by McCormick on June 17, concerning the damage done, and demanded payment therefor. Gillwood's attorney, in a letter dated June 30, disclaimed all responsibility. McCormick then delivered 201 sacks of damaged rice to Ignacio Lomba, who at McCormick's request, reconditioned, re-sacked and sold a part thereof. Later Gillwood brought an action in the municipal court for the recovery of unpaid rental, and McCormick filed a cross-complaint for damages. There was no question about the claim for rental, either in the municipal court or in the district court. In both courts, Gillwood obtained a judgment for $279.19 and McCormick a judgment for $342.62 with interest, on the difference between the two amounts, from the date of the cross complaint, and costs.

The first assignment is that the district court erred in holding that the cause of action set forth in the cross complaint was not "redhibitory" and therefore not barred by section 1379 of the Civil Code (1930 ed.). That section provides for the extinction of "actions arising from the provisions of the five preceding sections" by the lapse of six months "counted from the delivery of the thing sold".

McCormick's possession under the sublease dated from March 8, 1937. The counter complaint was dated September 23. It bears no file mark. Section 1873 of the Civil Code (1930 ed.) says that:

"Section 1873.—Prescription of actions is interrupted by their institution before the courts, by extra-judicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor."

The letter of June 22, *supra,* was "an extrajudicial claim". It interrupted the running of the six-month period. The action was not barred. Hence, as far as the question of prescription is concerned, the error, if any, in holding that the cause of action stated in the cross complaint was not an action to rescind the contract of lease, was harmless.

The second and third assignments are that the district court erred in holding that the cross complaint was based on section 1446 of the Civil Code, and in holding that the cross-complainant had alleged and proved a sufficient cause of action.

"The provisions relating to warranty, contained in the title of purchase and sale, are applicable to lease contracts." Civil Code, section 1443.

"A vendor is bound to deliver and warrant the thing which is the object of the sale." Section 1350.

This warranty includes an engagement "that there are no hidden faults or defects" in the thing sold. Section 1363. "The vendor is bound to give a warranty against hidden defects which the thing sold may have should they render it unfit for the use to which it was destined". Section 1373. "The vendor is liable to the vendee for the warranty against faults or hidden defects in the things sold, even when they should be unknown to him." Section 1374.

As between Gillwood and McCormick, the owner's possession and control of the roof was the possession and control of Gillwood. His warranty included an engagement that the warehouse was free from hidden defects which might render it unsuitable for the storage of rice or other cargo peculiarly susceptible to damage by the elements.

The lessor is obliged among other things to make on the leased property "all the necessary repairs in order to preserve it in condition to serve for the purpose to which it was destined". Civil Code, section 1444. If he does not do this, the lessee, by the terms of section 1446 "may request

the rescission of the contract and indemnity for losses and damages, or only the latter, leaving the contract in force."

The lessee is required by section 1449 to give notice of the repairs needed to keep the leased property in condition to serve the purposes contemplated by the lease. This provision presupposes such possession and control by the lessee as will enable him to meet the statutory requirement. It imposes no obligation upon a lessee of the ground floor of a building to notify his lessor who retains the possession and control of the roof that it is in need of repair.

McCormick alleged that the leakage was due to hidden defects in the roof, defects of which he had no knowledge. That part of the roof, he alleged, was also the floor (sic) of the penthouse. The penthouse and its floor—as well as that part of the roof not occupied by the penthouse—were not included in the lease and were never in McCormick's possession. As a result of the said defects and as a result of Gillwood's failure to put and keep the leased property in such condition as to serve the purposes for which it was leased, McCormick had suffered damages in the sum of $342.62. These averments were broad enough to permit recovery, either upon the theory of latent defects existing at the time of the lease, or upon the theory of Gillwood's subsequent failure to repair the roof.

From an agreed statement of facts, it appeared that in December 1936 and January 1937, during a period of twenty days, there had been continuous rain but the roof had not leaked. It does not follow that the defects which existed in June 1937 did not exist in January of that year. The second test may or may not have been more severe than the first. There is nothing to show that during any day or night of the twenty-day period, the amount of rain that fell was the same or similar to the amount that fell during the night of June 14, or during the night of June 15. There is nothing to indicate whether or not other conditions, including that of drainage, were the same on both occasions. In the view

we take of the case, however, we need not speculate further along these lines.

There is no doubt about the need of repairs at and before the time when the defects in question were discovered. These defects were easily corrected by the application of pitch at points where the roof joined the walls of the building. There is nothing upon which to base a conclusion as to whether the defects, at or before the time they were discovered, were invisible or conspicuous. If they existed as hidden defects at the time of the lease, Gillwood was liable on his statutory warranty. Otherwise, he was liable in damages for his failure to inspect and repair the roof at any time before the damage was done. If McCormick was not entitled to recover upon the first of the two alternative theories shadowed forth by the cross complaint, he was entitled to recover upon the second of those two theories.

■ The fourth assignment is that the district court erred in its application of the doctrine of *res ipsa loquitur*.
The obligation of making all necessary repairs rested, as we have shown, upon Gillwood. As between him and McCormick, he stood in the shoes of the owner against whom he had his own cause of action. There is no doubt of the existence of the defects at the time the damage was done. Immediately thereafter they were corrected without difficulty. In the total absence of any evidence to the contrary, the inference is that they were obvious and could have been easily discovered by an inspection of the roof as well before as after the rain which caused the damage. The roof was in the possession and control of the owner, Gillwood's lessor, and as far as the present controversy is concerned, his possession and control, must be regarded as the possession and control of Gillwood. In the authorities cited by Gillwood— *Correa* v. *Fajardo Sugar Co.*, 29 P.R.R. 318, and 20 R.C.L. 185, section 156—we find nothing to justify a reversal. See also *Torres* v. *Fernández*, 56 P.R.R. 459.

■ There is more merit in the fifth assignment. It is that the district court erred in finding that McCormick had been diligent in the mitigation of damages, and in holding that Gillwood could not complain of McCormick's delay in this regard. Lomba, the expert employed by McCormick to recondition the rice, some two weeks after the wetting, testified in substance that when he was called to examine the rice, the damage had been done and that if the 201 sacks had been delivered to him a day or two after the wetting, the number lost might have been reduced from forty to fifteen. Thus it appears that approximately two-thirds at least of the damages claimed by McCormick might have been avoided.

Other questions, as developed in the brief for appellant, need not be separately discussed.

The judgment will be modified reducing the amount of damages awarded McCormick from $342.62 with interest on the difference between that amount and the amount of rental due Gillwood to $140—also by awarding the costs to Gillwood—and, as modified, affirmed.

Mr. Justice Wolf dissented.